**UNITED STATES of America,**
**Appellant,**

v.

**ONE 1960 FORD PICKUP TRUCK,** Serial No. F10COA17418, General Acceptance Corporation, Claimant, Appellee.

No. 19334.

United States Court of Appeals
Fifth Circuit.

Aug. 1, 1962.

Macon L. Weaver, U. S. Atty., Birmingham, Ala., Raymond P. Mims and Hugh B. Harris, Jr., Asst. U. S. Attys., on the brief, for appellant.

William G. West, Jr., and Sirote, Permutt, Friend & Friedman, Birmingham, Ala., for appellee.

Before CAMERON and JONES, Circuit Judges, and DeVANE, District Judge.

DeVANE, District Judge.

This is another case where an able District Judge failed to require complete compliance with the requirements

of Title 18 U.S.C. § 3617(b) (3) before granting relief under the forfeiture provisions of the internal revenue laws. The writer of this opinion undertook to do the same thing in United States v. One 1950 Dodge Sedan, 5 Cir., 211 F.2d 738, but he too failed to get away with it.

The facts in this case are not in material controversy. The record shows that under date of June 30, 1960, one Walter Lawrence, Jr., purchased from Jim Skinner Ford Company of Birmingham, Alabama, the Ford pickup truck involved in this case under a conditional sales contract. The Skinner Company sold this contract to the General Acceptance Corporation for a valuable consideration.

At the time of the purchase Lawrence actually resided in Littleville, Colbert County, Alabama, although he gave in this contract as his post office address R.F.D. 7, Russellville, Franklin County, Alabama. The distance from Littleville to Russellville is approximately eight miles, but the two communities are in different counties.

On November 17, 1960, Lawrence was arrested by the Sheriff of Franklin County, Alabama, while transporting in this truck a quantity of sugar and yeast intended for use in violation of the liquor laws of Alabama and of the United States, and the truck was at that time seized and turned over to the A. T. T. U. for forfeiture under the provisions of Title 26 U.S.C. §§ 7301 and 7302. In due course the truck was forfeited to the United States.

The General Acceptance Corporation filed a petition for remittitur in its behalf under the provisions of Title 18 U.S.C. § 3617. The Court, after a lengthy hearing on the matter, granted remittitur to the petitioner. The question before the Court is whether petitioner fully complied with the provisions of Section 3617(b) (3). Appellant contends that it did not and that the Court was without authority to issue said remittitur.

The record discloses that Lawrence had no criminal record at the time he purchased the truck under the conditional sales contract, or at the time the truck was seized by the Sheriff of Franklin County, but appellant contends and offered proof to establish the fact that he had a *reputation* as being a dealer in moonshine liquor. The record further shows that petitioner relied entirely upon the Credit Bureau of Franklin County to furnish it with the information required by Section 3617(b) (3).

Mrs. Morris, who was proprietor of the Credit Bureau of Franklin County, testified that she made no specific inquiry of the Sheriff or any other enforcement officer of Franklin County as to the reputation of Lawrence with reference to moonshine liquor. She testified that she kept a faithful record showing all persons arrested in Franklin County for violation of the liquor laws. Mrs. Morris further testified that her records showed that Lawrence lived in Littleville, a community located in Colbert County, Alabama, and not at the address given in the purchase contract for the automobile. This should have been sufficient to put Mrs. Morris on inquiry from enforcement officers in other adjoining counties, or at least in Colbert County. She testified further that she made no inquiry whatever of any enforcement officer of Colbert County or of Littleville, or of any enforcement officer connected with the A. B. C. Board or any member of the A. T. T. U., both having jurisdiction in Franklin County. While these agencies had no representatives stationed in Franklin County, nevertheless they had jurisdiction in that County and had officers located in adjoining counties.

The Sheriff of Franklin County testified that Mrs. Morris never made any inquiry of him as to the reputation of Lawrence as a moonshine operator. He testified further that ever since he had been Sheriff of Franklin County he had maintained a diary of suspected whiskey violators and that Lawrence's name had been on this diary list ever since July or August, 1959. He testified further to

receiving several tips as to the location of moonshine stills set up and being operated by Lawrence, that he investigated these reports and found the stills as reported, but when he went to raid the still, no one was there, so all he did was to destroy the still.

■ Petitioner made no serious effort to controvert this testimony. The officer of petitioner that handled this transaction at the beginning testified that he made no inquiry of any enforcement officer anywhere as to the reputation of Lawrence with reference to moonshine whiskey and that he and petitioner relied entirely upon the information furnished by the Credit Bureau of Franklin County. The report of the Credit Bureau to petitioner falls far short of meeting the requirements of the Section with reference to the reputation of Lawrence. Her report to petitioner also falls far short of fulfilling the requirements for remission under the statute.

■ On the basis of the testimony introduced by appellant on this point, the Court was without authority to grant the remittitur. Granting of relief under the forfeiture remission statute is not a matter of equity or discretion until the applicable conditions precedent to such relief have been fully met. Murdock Acceptance Corp. v. United States (5th Cir.), 218 F.2d 702. The early leading case on this question is Universal Credit Company v. United States (4th Cir.), 111 F.2d 764. The question has been before this Court on a sufficient number of times for the matter to be well settled here. See United States v. One 1950 Lincoln Sedan (5th Cir.), 196 F.2d 639; United States v. Dodd (5th Cir.), 205 F.2d 260;

United States v. One 1955 Model Ford 2-Door Coach (5th Cir.), 261 F.2d 125.

This Court finds and holds that the District Judge was without authority to grant remittitur and the judgment of the District Court is reversed and the case is remanded to that Court for further proceedings in accordance with this opinion.

Reversed and remanded.

CAMERON, Circuit Judge (dissenting).

I think the able and conscientious author of the majority opinion here would have served the ends of justice more nearly if he had applied the qualities of mercy which animated the decision referred to by him which this Court reversed in United States v. One 1950 Dodge Sedan, 5 Cir., 211 F.2d 738. The fact is that, in fashioning a body of law to implement the provisions of 18 U.S. C.A. § 3617(b) (3), the courts generally, including this one, have not achieved a full measure of consistency. Perhaps this is inevitable since every case must be decided on its own peculiar facts.

I think the finding of the able District Judge who heard this case below and who entered detailed findings of fact and conclusions of law that "General Acceptance Corporation, the claimant herein, made a proper inquiry under the provisions of Title 18 U.S.C.A. § 3617, when it made its inquiry by and through the credit bureau of Franklin County concerning the record and reputation of Walter Lawrence, Jr.", was a finding which lay in his discretion to make.[1] Mrs. Morris testified that the records of her credit agency ran back to

---

1. The court below stated further in its findings:
"The said credit bureau advised General Acceptance Corporation, among other things, as follows:
" 'No court or police records. No adverse information.'
It was the practice of Mrs. Jack Morris, the proprietor of the credit bureau of Franklin County, to make weekly inquiries with the courts and county and city law enforcement officers of Frank-

lin County, that being the address and trade area of Walter Lawrence, Jr. Inquiry was not made of the law enforcement officers in adjoining counties. She was never informed of Walter Lawrence, Jr. having a reputation as being a 'moonshiner.' General Acceptance Corporation paid the credit bureau of Franklin County valuable consideration for making the inquiries concerning the said Walter Lawrence, Jr. * * *

1949. She further testified categorically that she went to the county courthouse once each week, checking with the office of the circuit court clerk, the ex-sheriff who is judge of the court, the city hall, and the sheriff himself to find what arrests had been made in connection with moonshine activities. Each of the officers knew the purpose of her inquiry, and none of them had ever mentioned to her that Lawrence had a reputation as a moonshiner, or that there had ever been any arrests or convictions of him prior to the time the Acceptance Corporation bought this commercial paper. The fact is that all of the testimony concerning Lawrence's reputation for moonshiner activities really related to or was based upon the episode of November 17, 1960, when he was arrested with sugar and yeast in the truck except that given by Mr. Trull who was supervisor of the A. B. C. Board of Alabama at Tuscumbia with a coverage of eight counties. He admitted that Lawrence had never been arrested, but stated that his men had reported to him that they had information that he was in the whiskey business. That testimony was somewhat discounted by the fact that his representative who worked Franklin and Lawrence Counties (where Lawrence lived or was active), when asked categorically whether he knew Walter Lawrence's reputation in his community, stated: "I didn't know of it prior to this time. That was the first time I had seen him." (The time referred to was November 17, 1960.)

The other witness offered by the government to establish Lawrence's bad reputation was a policeman in the same small town where Lawrence lived who stated that he had never arrested Lawrence, and that the latter's reputation for dealing liquor had not been "started too long" before his arrest on November 17, 1960. When asked what his response concerning Lawrence's reputation on June 30, 1960 would have been, he stated definitely that he did not remember whether he had heard any reports of Lawrence's reputation covering that period.

I think it exceedingly doubtful if the equivocal and unsatisfactory evidence concerning reputation would have been adequate to warrant classifying Lawrence as a "person having a record or reputation for violating laws of the United States or of any State relating to liquor", as provided in subsection (b) (3) of the statute involved. The sheriff merely testified that he classified Lawrence as a "prospective" violator of these laws, which, to my mind, indicates that he merely looked upon him as a suspect. The proof in this record falls short in my opinion, of measuring up to the commonly accepted definition of reputation which was written by Judge Learned Hand in United States v. C. I. T. Corporation, 2 Cir., 1937, 93 F.2d 469, 470–471:

"The notion seems to be that because the officials had been investigating Goldberg for a year, that gave him a reputation as a violator of the liquor laws. That is an error. The statute is drawn so as to impose upon the seller the duty of inquiry only when there exists *something which is likely to reach his ears, a public record or a general reputation*. No doubt he always takes the chance in any sale that there may be one or both of these; but his duty does not arise if there is not. * * * Here there was no record; * * *. Nor was there any reputation. Some of the officials—how many we do not know—had for long suspected Goldberg of breaking the liquor law, but *that did not give him the reputation of doing so*. Such inquiries are kept secret lest they come to the knowledge of the suspect and he become wary. The statute means not that, but reputation in the general sense, a prevalent or common belief, a general name, the opinion of a number of persons, a more or less extended and public attribution of the crime, likely to be spread about

so as to reach the seller. The knowledge of those charged with the duty of prosecuting Goldberg was not likely to do so." [Emphasis added.]

I think, therefore, that the court below could well have found that Lawrence, at the time of this commercial transaction, did not have such a reputation as was likely to be spread about so as to reach General Acceptance. There is a tendency to confuse the kind of reputation which will be the basis for the necessity of an investigation and the kind of investigation which will itself satisfy the statute.

The majority cite and doubtless rely considerably upon the case of United States of America v. One 1955 Model Ford Tudor Coach, etc., 1958, 5 Cir., 261 F.2d 125. It should be borne in mind that everything which was there said was predicated upon two facts; one, that no investigation at all was made concerning the purchaser of the automobile within seven months of the time of the purchase; and that if any inquiry had been made in Lowndes County, it would have disclosed that the purchaser had both a criminal record and a reputation as a violator of liquor laws there.

The situation before the court here bears little resemblance to the one concerning which the opinion was written in that case.

It is worthy of note, moreover, that the last decision of this Court on the subject indicates a more lenient attitude towards innocent parties who get themselves enmeshed in the harsh forfeiture provisions of 26 U.S.C.A. § 7302. I quote some disconnected excerpts from Florida Dealers and Growers Bank et al. v. United States, 1960, 5 Cir., 279 F.2d 673, 676–677:

"The primary purpose of the forfeiture statute is to protect the revenue. The primary purpose of the remission statute is to relieve innocent [purchasers] whose property has been seized. * * *

"By its nature, the remission statute assumes the validity of the forfeiture but also assumes that outstanding interests in property and bona fide claims to property are not snuffed out by the car's guilt. They continue viable, at least to the extent of permitting innocent persons to ask that the sovereign temper the strictness of the rule of forfeiture when there are equitable grounds for relief. * * *

"Good conscience and equity are the controlling considerations with the judge in acting under it [citing several cases] * * *."

I think this is a correct statement of the law and of the attitude which courts should take in cases where there is no doubt about the innocence of the claimant, as is the case here. I think, therefore, that the lower court had ample discretion to enter the judgment of remission, and I respectfully dissent from the majority opinion which reverses its judgment.

